70 Cal.Rptr.3d 319 (2008)
158 Cal.App.4th 868
CITY OF LOS ANGELES, Plaintiff and Appellant,
v.
2000 JEEP CHEROKEE etc., Defendant;
Richard Reinsdorf, Defendant and Respondent.
Nos. B185673, B188182.
Court of Appeal of California, Second District, Division One.
January 8, 2008.
*320 Rockard J. Delgadillo, City Attorney, Asha Greenberg, Assistant City Attorney, Jonathan S. Galatzan and Maria G. Aguillon, Deputy City Attorneys, for Plaintiff and Appellant.
Mark T. Clausen, for Defendant and Respondent.
VOGEL, J.
In April 2005, Richard Reinsdorf's Jeep was seized when he was arrested for soliciting prostitution (Pen.Code, § 647, subd. (b)). In May, he was notified that the City of Los Angeles had initiated forfeiture proceedings under section 41.70 of the Los Angeles Municipal Code, which authorizes the seizure and forfeiture of vehicles used to solicit prostitution. Reinsdorf challenged the City's action, claiming the ordinance was preempted by state law and relying on O'Connell v. City of Stockton (2005) 128 Cal.App.4th 831, 27 Cal.Rptr.3d 696, in which the Third District held that a similar City of Stockton ordinance was preempted by state law. The trial court agreed, gave judgment to Reinsdorf against the City, and later granted Reinsdorf's motion for attorney's fees in the amount of $49,735.90.
The City appealed, relying on Horton v. City of Oakland (2000) 82 Cal.App.4th 580, *321 98 Cal.Rptr.2d 371 (disapproved by O'Connell v. City of Stockton (2007) 41 Cal.4th 1061, 1072-1074, 63 Cal.Rptr.3d 67, 162 P.3d 583) in which the First District had rejected a similar preemption challenge to a City of Oakland ordinance authorizing the civil forfeiture of vehicles involved in soliciting prostitution or acquiring drugs. By that time, the Supreme Court had granted review in O'Connell, and on September 25, 2006, we rejected Reinsdorf's preemption argument, reversed, and remanded the matter to the trial court with directions to consider the merits of Reinsdorf's motion. (City of Los Angeles v. 2000 Jeep Cherokee (Sept. 25, 2006, B185673), 2006 WL 2724030 [nonpub. opn.].) As we anticipated (id., 2006 WL 2724030, *2, fn. 4), the Supreme Court granted review in our case, held it pending the decision in O'Connell v. City of Stockton, supra, 41 Cal.4th 1061, 63 Cal.Rptr.3d 67, 162 P.3d 583, then transferred our case back to us with directions to vacate our earlier decision and reconsider the cause in light of O'Connell.
Having done so, we conclude (and the City concedes) that O'Connell compels affirmance of the judgment on the ground that the Los Angeles ordinance is preempted by state law.

DISCUSSION

A.
Section 41.70 of the Los Angeles Municipal Code provides as relevant that "[a]ny vehicle used to solicit or [otherwise] engage in an act of prostitution is declared a nuisance and the vehicle shall be enjoined and abated as provided in this section," and that "[a]ll right, title and interest in any [such] vehicle ... shall vest in the City upon commission of the act giving rise to the nuisance under this section." A "vehicle subject to forfeiture under this section" may be seized upon an order of court or without court order if the "seizure is incident to an arrest or search under a search warrant" or there is "probable cause to believe the vehicle was used in violation of this section." The ordinance requires an immediate investigation by the seizing agency, notice of the seizure to the vehicle's owner, and notice of a potential claimant's right to a post-seizure hearing to determine the validity of the seizure.

B.
Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general [state] laws." (Italics added.) If otherwise valid local legislation does conflict with state law, it is preempted by such law and is voidand such a conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication. (O'Connell v. City of Stockton, supra, 41 Cal.4th at p. 1067, 63 Cal. Rptr.3d 67, 162 P.3d 583.)
A local ordinance duplicates state law when it is coextensive with state law; it contradicts state law when it is inimical to or cannot be reconciled with state law; and it enters a field fully occupied by state law either (1) when the Legislature expressly manifests its intent to occupy the legal area or (2) when the Legislature impliedly occupies the field. (O'Connell v. City of Stockton, supra, 41 Cal.4th at pp. 1067-1068, 63 Cal.Rptr.3d 67, 162 P.3d 583.) The Legislature has impliedly occupied an area of law when (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered *322 by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality. (O'Connell v. City of Stockton, supra, 41 Cal.4th at p. 1068, 63 Cal.Rptr.3d 67, 162 P.3d 583.)

C.
As noted above, the Los Angeles ordinance provides for the forfeiture of any vehicle used to solicit or engage in an act of prostitution. The ordinance at issue in O'Connell v. City of Stockton, supra, 41 Cal.4th 1061, 63 Cal.Rptr.3d 67, 162 P.3d 583 had a substantively indistinguishable provision (and, unlike ours, also provided for the seizure of vehicles used for illegal drug activity). In O'Connell, the Supreme Court first concluded that the state's comprehensive regulation of drug offenses as a whole impliedly preempted the City of Oakland's ordinance allowing forfeiture of vehicles used in acquiring controlled substances (id. at p. 1072, 63 Cal.Rptr.3d 67, 162 P.3d 583), then turned to the other aspect of the Oakland forfeiture ordinance, "allowing for the forfeiture of any vehicle used to solicit prostitution" (id. at p. 1073, 63 Cal.Rptr.3d 67, 162 P.3d 583), and concluded that this part of the ordinance was expressly preempted:
"Vehicle Code section 21 states: `Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.' (Italics added.) Thus, under section 21, local regulation of any `matter[ ]' covered by this state's Vehicle Code is prohibited unless the Legislature has expressly allowed local regulation in that field. [Citations.]
"The matter that is covered by the Vehicle Code and that is pertinent here is the authority of local government entities to declare a vehicle used in soliciting prostitution to be a public nuisance. That topic is addressed in the Vehicle Code by subdivision (a) of section 22659.5. That provision allows a city or a county to `adopt an ordinance establishing a five-year pilot program that implements procedures for declaring any motor vehicle a public nuisance' when used in the commission of specified criminal conduct, including acts covered in Penal Code section 647, subdivision (b), which prohibits engaging in acts of prostitution as well as soliciting or agreeing to engage in such acts. (Veh. Code, § 22659.5, subd. (a), italics added.)
"Subdivision (b) of Vehicle Code section 22659.5 permits local ordinances adopted under the statutory scheme to `include procedures to enjoin and abate the declared [vehicular] nuisance by ordering the defendant not to use the vehicle again,' and it allows for the forcible removal of vehicles. Under subdivision (c) of section 22659.5, any action taken to abate a public nuisance is limited to those `specified in subdivision (b),' that is, an injunction against or abatement of a declared nuisance or the removal of a nuisance vehicle. Section 22659.5 contains no language, however, that would allow a local entity such as the City [of Oakland] to seize and forfeit a vehicle that, through its use in soliciting prostitution, has created a public nuisance.
"We summarize: Vehicle Code section 21 precludes local regulation of `matters covered' by the Vehicle Code, absent express legislative authorization. The use of vehicles in soliciting prostitution is a matter *323 that the Vehicle Code covers in section 22659.5, which establishes a five-year pilot program under which cities and counties may treat as a public nuisance any vehicle used in soliciting prostitution, but that pilot program does not allow for forfeiture of the vehicle. There being no express legislative authorization for any other form of local regulation of the matter covered by Vehicle Code section 22659.5, Vehicle Code section 21 precludes an ordinance like [Oakland's], which seeks to regulate vehicle use in soliciting prostitution by requiring forfeiture of the vehicle. Under Vehicle Code section 21, therefore, the City's ordinance is expressly preempted by state law." (O'Connell v. City of Stockton, supra, 41 Cal.4th at pp. 1073-1074, 63 Cal. Rptr.3d 67, 162 P.3d 583.)
O'Connell disapproves Horton v. City of Oakland, supra, 82 Cal.App.4th 580, 98 Cal.Rptr.2d 371 (O'Connell v. City of Stockton, supra, 41 Cal.4th at p. 1074, 63 Cal.Rptr.3d 67, 162 P.3d 583), rejects the City of Oakland's effort to uphold its ordinance on the ground that it addressed conduct "exclusively" within the purview of state law (id. at p. 1075, 63 Cal.Rptr.3d 67, 162 P.3d 583), and concludes that the "illicit commercial activitiesprostitution and trafficking in controlled substancesthat are the focus of [Oakland's] vehicle forfeiture ordinance are matters of statewide concern that our Legislature has comprehensively addressed through various provisions of this state's Penal and Vehicle Codes, leaving no room for further regulation at the local level. One of the lesser harms associated with the crimes is the traffic congestion that may result when vehicles are used to solicit acts of prostitution or to buy or sell drugs illegally on city streets. Although traffic congestion is a local problem that cities ordinarily are authorized to address, they may not do so by means of an ordinance that, by allowing forfeiture of a vehicle used to commit a specific state law violation, impinges on an area fully occupied or exclusively covered by state law." (O'Connell v. City of Stockton, supra, 41 Cal.4th at p. 1076, 63 Cal. Rptr.3d 67,162 P.3d 583.)
Because the City of Los Angeles's ordinance is substantively indistinguishable from the Oakland ordinance, it follows ineluctably that our ordinance is also expressly preempted by state law and that the judgment in favor of Reinsdorf must be affirmed.[1]

D.
This brings us to the issue of attorney's fees, which the trial court awarded to Reinsdorf in the amount of $49,735.90. Because the City did not challenge the award of fees in its appellant's opening brief or its reply brief, it cannot do so in its post-remand brief-and the trial court's fee award must be affirmed. (Cf. Moore v. Shaw (2004) 116 Cal.App.4th 182, 200, fn. 10, 10 Cal.Rptr.3d 154; People v. Newton (2007) 155 Cal.App.4th 1000, 1005, 66 Cal. Rptr.3d 422.)
*324 In his post-O'Connell supplemental brief, Reinsdorf asks for an additional award of fees for the cost of the appeal, claiming his action succeeded in enforcing an important right affecting the public benefit within the meaning of section 1021.5 of the Code of Civil Procedure. We disagree. Aside from the fact that he did not seek appellate fees in his respondent's brief, it wasn't Richard Reinsdorf who conferred a benefit on the defendants whose cars were wrongfully seized by the City of Los Angelesit was Kendra O'Connell, the plaintiff in O'Connell v. City of Stockton, supra, 41 Cal.4th 1061, 63 Cal.Rptr.3d 67, 162 P.3d 583. Reinsdorf's case just happened to be in the pipeline when the Supreme Court granted review in O'Connell, and today's declaration that the Los Angeles ordinance is invalid adds nothing to the equation.

DISPOSITION
The judgment is affirmed.
We concur: MALLANO, Acting P.J., and ROTHSCHILD, J.
NOTES
[1] The Los Angeles ordinance was adopted after Horton approved the Oakland ordinance. In 2002, the Los Angeles City Council found: "The City of Oakland is one of many municipalities in California ... that have enacted vehicular forfeiture statutes using local control. These laws have been shown to decrease nuisance prostitution activity when applied in areas of blatant streetwalking prostitution. The California Supreme Court [presumably by denying review in Horton] has ruled [on] the constitutionality of this type of approach, choosing to uphold the [Oakland] ordinance. ..." (Horton v. City of Oakland, supra, 82 Cal.App.4th 580, 98 Cal.Rptr.2d 371, review denied Oct. 18, 2000.) The dissent in O'Connell may provide solace to the Los Angeles City Council members who relied on Horton. (See O'Connell v. City of Stockton, supra, 41 Cal.4th at pp. 1076-1081, 63 Cal.Rptr.3d 67, 162 P.3d 583, dissenting opn. of Corrigan, J.)